*IN ERROR.*
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

STEPHEN THORN, } *Plaintiff in error,*

*against*

ANTHONY I. BLANCHARD, } *Defendant in error.*

Where A. and 23 others, inhabitants of the same county presented a petition to the council of appointment, stating that B. district attorney, was actuated by improper motives in his official conduct, and that, from malice towards some, and the emoluments arising from the public prosecutions in other cases, gave rise to many indietments, and praying that B. might be removed from office, which petition was read by the council, who removed B. from his office ; it was held, that an action for a libel would not lie against A. at the suit of B.   Tho' the words, in such case, be false, and actionable, in *themselves,* yet it is insumbent on the plaintiff to prove express malice ; or that the petition was actually malicious and groundless, and presented merely to injure the plaintiff's character. *It seems,* that where a person addresses a complaint to persons competent to redress the grievance complained of, no action will lie against him, whether his statement be true or false, or his motives innocent or malicious.

THIS cause came before the court, on a writ of error from the supreme court.   The present defendant in error brought an action for a libel, in the court below, against the plaintiff in error.

The declaration stated, that whereas the said *Anthony* is, &c. yet the said *Stephen*, well knowing the premises, but contriving, and wickedly and maliciously intending to injure the said *Anthony*, in his aforesaid good name, fame, credit and reputation, and to bring him into public scandal, infamy and disgrace amongst his neighbours and others, the good citizens of this state, and to cause him to be dismissed and discharged from his said honourable and lucrative office of district attorney, in the district aforesaid, heretofore, to wit, on the seventh day of *April*, in the year of our Lord one thousand eight hundred and three, at *Salem*, in the county of *Washington*, to wit, at the city and in the county of *Albany*, aforesaid, did, falsely and maliciously write and publish, or cause or procure to be written and published, a certain false, scandalous and malicious libel, of and concerning the said *Anthony*, as such district attorney, of the tenor and effect following, that is to say : " To the honourable the council of appointment of the state of *New-York.*   We the undersigned, inhabitants of the county of *Washington*, (meaning the said *Stephen* and others, inhabitants of the county of *Wash-*

IN ERROR.
........
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

*ington*,) humbly represent, that the manner in which the public prosecutions (meaning the criminal prosecutions of the good people of this state) have been managed by the present district attorney (meaning the said *Anthony*, who was then and there district attorney, as aforesaid) is highly improper; that, in our opinion, (meaning in the opinion of the said *Stephen*, and the other inhabitants aforesaid,) a number of indictments have been found by the influence of the district attorney (meaning the said *Anthony*) who, (meaning the said *Anthony*,) at that time was actuated by improper motives; (meaning that he, the said *Anthony*, as district attorney aforesaid, by undue influence in his said office, and from corrupt motives, has caused a number of indictments to be found;) that malice towards some, and the emoluments arising from the public prosecutions in other cases, have given rise to many indictments, (meaning that the said *Anthony*, as district attorney aforesaid, had, from malice in some cases, and for unlawful gain in other cases, caused many indictments.) " Your petitioners (meaning the said *Stephen* and the said other inhabitants) therefore (meaning for the false, scandalous, wicked and malicious causes above mentioned and pretended; humbly pray, that *Anthony I. Blanchard*, the present district attorney, (meaning the said *Anthony*, who was then and there district attorney, as aforesaid,) may be removed from that office." By reason and means of the writing and publishing of which said false, scandalous and malicious libel, of and concerning the said *Anthony*, in manner aforesaid, the said *Anthony* is not only hurt and injured in his good name, fame, credit and reputation, and brought into public scandal, contempt, infamy and disgrace, but was afterwards, and after the publication of the said libel, and by reason of the unjust suspicions thereby excited, and the imputations thereby made against the moral character of the said *Anthony*, to wit, on the ninth day of *April*, in the year aforesaid, discharged from his said

IN ERROR.
........
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

honourable and lucrative office of district attorney in the district aforesaid, to wit, at *Salem*, and in the county of *Washington*, that is to say, at the city, and in the county of *Albany*, aforesaid : And hath ever since been deprived of all the honours, emoluments and advantages that would, and otherwise might have arisen and accrued to him from the same office : And whereas, also, the said *Stephen*, further contriving, and wickedly and maliciously intending to injure the said *Anthony* in his aforesaid good name, fame, credit and reputation, to bring him into public scandal, infamy and disgrace amongst his neighbours and others the good citizens of this state, and to cause him to be dismissed and discharged from his said lucrative and honourable office of district attorney aforesaid, in the district aforesaid, afterwards, that is to say, on the seventh day of *April*, in the year of our Lord one thousand eight hundred and three, at *Salem*, in the county of *Washington*, to wit, at the city and in the county of *Albany* aforesaid ; did falsely and maliciously publish, or cause and procure to be published, a certain other false, scandalous and malicious libel of and concerning the said *Anthony*, as such district attorney, of the tenor and effect following, that is to say : " To the honourable the council of appointment of the state of *New-York*. We, the undersigned, inhabitants of the county of *Washington*, (meaning the said *Stephen* and others, inhabitants of the said county of *Washington*,) humbly represent, that the manner in which the public prosecutions (meaning the criminal prosecutions of the good people of this state) have been managed by the present district attorney (meaning the said *Anthony*, who was then and there district attorney as aforesaid) is highly improper. That in our opinion (meaning in the opinion of the said *Stephen* and the other inhabitants aforesaid) a number of indictments have been found by the influence of the district attorney, (meaning the said *Anthony*,) who, (meaning the said

*Anthony*,) at the time, was actuated by improper mo-
tives : (meaning that he, the said *Anthony*, as district
attorney aforesaid, by undue influence in his said office,
and from corrupt motives, had caused a number of in-
dictments to be found :) That malice towards some,
and the emoluments arising from the public prosecutions
in other cases, have given rise to many indictments ;
(meaning that the said *Anthony*, as district attorney
aforesaid, had, from malice in some cases, and for un-
lawful gain in other cases, caused many indictments.)
Your petitioners (meaning the said *Stephen* and the
said other inhabitants) therefore (meaning for the false,
scandalous, wicked and malicious causes above mention-
ed and pretended) humbly pray, that *Anthony I. Blanch-
ard*, the present district attorney, (meaning the said *An-
thony*, who was then and there district attorney afore-
said,) may be removed from that office," (meaning the
said office of district attorney aforesaid.) By rea-
son of the publishing of which said last mentioned
false, scandalous and malicious libel, of and concern-
ing the said *Anthony*, in manner aforesaid, the said
*Anthony* is not only hurt and injured in his good name,
fame, credit and reputation, and brought into public
scandal, contempt, infamy and disgrace, but was after-
wards, and after the publication of the said libel, by
reason of the unjust suspicions thereby excited, and the
imputations thereby made against the moral character of
the said *Anthony*, to wit, on the ninth day of *April*, in
the year aforesaid, discharged from his said honourable
and lucrative office of district attorney, in the district
aforesaid, to wit, at *Salem*, in the county of *Washing-
ton*, that is to say, at the city, and in the county of *Al-
bany* aforesaid, and hath ever since been deprived of all
the honours, emoluments and advantages that would and
might otherwise have arisen and accrued to him from
the same office. And so the said *Anthony* says, that

IN ERROR.
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

IN ERROR.
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

he is injured, and hath sustained damages to the amount of ten thousand dollars, and therefore he brings suit," &c.

The defendant pleaded not guilty, and the cause was tried the 27th *October*, 1807, at the sittings in *Albany*, before Mr. Ch. J. *Kent*. At the trial, the defendant in error produced, in evidence, a petition signed by the plaintiff in error, and set forth in the declaration; and proved, by a clerk in the office of the secretary of state, that the same petition was found amongst the files of the council of appointment, deposited in the secretary's office; and it was admitted, that the same petition, while the defendant in error was district attorney, was read in the council of appointment, immediately preceding the plaintiff's removal. The petition is as follows:

" To the honourable the council of appointment of the state of *New-York*. We, the undersigned, inhabitants of the county of *Washington*, humbly represent, that the manner in which the public prosecutions have been managed by the present district attorney is highly improper. That, in our opinion, a number of indictments have been found by the influence of the district attorney, who, at the time, was actuated by improper motives. That malice towards some, and the emoluments arising from the public prosecutions in other cases, have given rise to many indictments. Your petitioners therefore pray, that *Anthony I. Blanchard*, the present district attorney, may be removed from that office."

The counsel for the said *Stephen*, then insisted, before the chief justice, on the behalf of the said *Stephen*, that the several matters so produced and given in evidence, on the part of the said *Anthony I. Blanchard*, were not sufficient to entitle the said *Anthony I. Blanchard* to a verdict in the said action. And the said chief justice did then and there decide and deliver his opinion, that the said se-

veral matters so produced and given in evidence, on the part of the said *Anthony I. Blanchard*, were sufficient to entitle the said *Anthony I. Blanchard* to maintain his said action. Whereupon the counsel for the said *Stephen Thorn* did then and there, in behalf of the said *Stephen Thorn*, except to the aforesaid opinion of the said chief justice, and insisted on the matters as insufficient to sustain the said action. And inasmuch as the said several matters so produced and given in evidence, do not appear, by the record in the said cause, the said counsel for the said *Stephen Thorn* did then and there prepare their exceptions aforesaid to the opinion of the said chief justice, and requested him to put his seal to this bill of exceptions, containing the said several matters so produced and given in evidence as aforesaid, according to the statute in that case made and provided.

On this bill of exceptions the writ of error was brought. And the counsel for the plaintiff in error stated two grounds, on which they contended the judgment below ought to be reversed.

1. Because the council of appointment, to whom the petition was addressed, had competent power to examine the charges exhibited against the defendant in error; and that to address a petition to the council of appointment for the removal of an officer, the tenure of whose office is during the pleasure of the council, cannot be deemed libellous.

2. To constitute a libel, implied or express malice must be shown ; and it is insisted, that malice cannot be inferred from the fact of presenting to the council of appointment only, the petition containing specific charges against the defendant in error. The council having competent authority to inquire into the truth of the charges, and redress the grievance complained of, it was incumbent on the defendant in error to have shown, on the trial, express malice; which not being done, the plaintiff in error was entitled to judgment.

IN ERROR.
.......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

*IN ERROR.*
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.
_____

* 1 *Term Rep.* 111.

‡ 4 *Co.* 14.

‡ 12 *Co.* 104.

§ *Cro. Eliz.* 230. 243 460. 14.
¶ 1 *Saund.* 131.
‖ *Burr.* 807.

** *Hawk. P. C.* b. 1. c. 73. s. 8.

*Russel*, for the plaintiff in error. To make out a li-* bel in this case, the paper must be false, scandalous and malicious, and the publication of it unlawful. In every case of a libel, there may be a necessary and implied justification, arising from the occasion, or the manner and circumstances of the publication.* Where a complaint is made to a court of justice, to redress a grievance, or to any body of men having jurisdiction or power to afford redress, it cannot be a libel. This principle was laid down in *Cutler* v. *Dixen*,† reported by Lord *Coke*. In *Hersey's* case,‡ in the star chamber, the bill was exhibited from mere malice and spite, yet the court gave damages to the defendants, because they had no remedy at common law for the slander. The same principle was recognised in the case of *Buckley* v. *Wood*;§ and in *Lake* v. *King*,¶ it was decided by Ch. J. *Hale*, and the other judges of K. B. that a petition to a committee of parliament was not libellous, though it contained matters false and scandalous, being in a summary course of justice, before those who had power to examine whether it was true or false.

The opinion of Serjeant *Hawkins*** will, probably, be relied on to show, that where the proceeding is malicious and groundless, an indictment will lie; but it does not follow, that an action would lie at the suit of the party. Yet it is the mere doubt of *Hawkins*, who, after laying down the principle, according to the authorities which have been cited, says, " Yet, if it should manifestly appear, from the whole circumstances of the case, that a prosecution is entirely false and malicious, and commenced, not with a design to go through with it, but only to expose the defendant's character under the show of a legal proceeding ; I cannot see any reason why such a mockery of public justice should not rather aggravate the offence, than make it cease to be one ; and make such scandal good ground of an indictment at the suit of the king, as it makes the malice of their pro-

ceeding a good foundation of an action on the case, at the suit of the party, whether the court had a jurisdiction of the cause or not."

By an action on the case, *Hawkins*, no doubt, intended an action for a malicious prosecution, which will lie wherever a person is prosecuted maliciously, and without cause ; for probable cause is, in such suit, matter of justification. He could not have intended that an action for a libel would lie, for he says, in the next page, that truth is no justification of a libel.

Though Lord *Mansfield*, in the case of *Ashley* v. *Younge*,* says, there is good sense in the opinion of *Hawkins ;* yet he considered it as not applicable to a case in which the court has jurisdiction ; and he relies on the case of *Lake* v. *King* as an authority.

The council of appointment, though not a court, have power to remove officers, who have been guilty of any misconduct, and thereby to redress the grievance. If this petition had been published in the gazette, it would have been libellous ; but it is not so, when presented to the proper persons who have power to remedy the evil, which was the subject of complaint.

In the case of *King* v. *Bailey*,† where a paper was addressed to a general and four principal officers of the guards, to be presented to the king, for redress, suggesting a fraud by a military officer ; the court held it no libel, but a mere representation of an injury, drawn up in a proper way of redress.

So in the case of *Rex* v. *Baillie*,‡ where a work was distributed among the governors of the *Greenwich* hospital, reflecting on the conduct of Lord *Sandwich*, Lord *Mansfield* held, that the distribution of the copies to the persons who were, from their situation, called on to redress the grievance, and had the power to do so, was not a publication sufficient to make a libel.

IN ERROR.
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

* 2 *Burr.* 807.

† 4 *Bac. Abr.* 452. *Libel,* (A.2.) *Andr.* 229.

‡ *Esp. Dig.* 506.

IN ERROR.
.......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

*Henry* and *Van Vechten*, contra. The general principles which have been laid down by the counsel for the plaintiff in error, are not denied; and the rule to be extracted from the summary of them given by Serjeant *Hawkins*, is, that where a person proceeds according to the ordinary course of justice, he will be protected; but he must come into a court of justice with pure hands and honest intentions, for the purposes of truth and justice; not with vindictive feelings, and to gratify his malice. Two cases have been cited, which are sup. osed to be out of the rule, as confined to a proceeding in the ordinary course of justice. In the case of *King* v. *Bailey*, it appears that the complaint was made to superior officers, who had the power, and whose duty it was, to bring the inferior officer before a military court, to be tried for his misconduct; it was, therefore, in the regular and usual course of justice. The governors of *Greenwich* hospital were a corporate body, and had power to take cognisance of, and redress the grievance; and the complaint was made by one of the deputy governors, whose duty it was to make it.

Again, as to the petition to the committee of the house of commons in *England*. The house of commons is the grand inquest of the nation, to bring all offenders to justice; and at the commencement of each session, a committee for grievances is appointed;* and the commons may exhibit an accusation to the house of lords, by petition, or impeachment.

In *Lake* v. *King*, the complaint made was to the committee of grievances, who had a right to inquire into the fact. So, if the plaintiff in error had presented a petition to the house of assembly, who have power to inquire, and to impeach, it would have been in the regular and ordinary course of justice.

But the council of appointment have no power analogous to that of a court of justice, or of the assembly. They have power only to appoint certain officers, and to re-

* 4 *Inst.* 11.
*Com. Dig.* 206.
(E. 6.) 234. E.
14, 15.

3

IN ERROR.
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

move such as depend on their pleasure; that is, to declare the will and pleasure of the government as to those officers. Their discretion is unlimited and uncontrolled. It is important that they should have correct information; that their minds should remain unprejudiced and unbiassed by the representations of interested persons. They cannot call the person accused before them, or try him; they cannot examine witnesses, or enter into any legal investigation of the truth of the charges. Even if the officer should be acquitted of every charge, still he may be removed from office. For what purpose, then, would be a power of inquiry, when the power to remove remains uncontrolled? It would merely serve to invite charges, not for the sake of the public good, for the purpose of truth and justice; but to gratify private hatred and malice. If the council have power to receive charges, they must have the power to try; but it will not be pretended, that they can compel the attendance of the accused, or of witnesses, or even administer an oath. If a witness should come voluntarily before them, and take an oath, he could not, if he swore falsely, be prosecuted for perjury.

It may be said, that it would close the doors of the council against all representations, if those who make them are liable to be punished, in case they are false and scandalous. But a possible inconvenience, in a particular case, is not a sufficient reason for granting a general license to all the world, to make what representations they please. The only shield which a person ought to have, and which an honest man can wish, is truth. A deliberately false and malicious charge against a public officer, presented to the council of appointment, ought not to be protected. Such representations are generally made from selfish or sinister motives, to gratify violent and malignant passions. Such a license is dangerous in the extreme. It strikes at the basis of a republican government, public confidence. Is a *judicial*

IN ERROR.
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

officer, a recorder of one of our cities, to be removed from office, on a false and malicious charge, made by some prejudiced and malignant individual ? Good men will be driven from office, or decline to serve, if they are to be liable to be thrust out, unheard, by the secret machinations of malevolence.

Again, the decision of the council is final and conclusive, and without appeal. What is the meaning of the 13th article of the constitution, which declares, that " no member of this state shall be disfranchised, or deprived of any of the rights or privileges secured by the constitution, unless by the law of the land, or the judgment of his peers ?" If it is said, that the tenure of the office is at the pleasure of the council, and they have a constitutional power to remove ; then, we say, the inquiry is nugatory, and the council is not the proper place for the hearing and decision of such complaints.

By the 4th section of the act concerning the rights of the citizens of this state,* it is declared, that " no person shall be put to answer, without presentment before justices, or matter of record, or due process of law, according to the law of the land." How is it possible to find any analogy, in this complaint to the council, to any course of judicial proceeding, known to the constitution and laws of the state, or to any of the cases in *England,* which have been cited ?

It may be observed, also, that in all those cases, the party had another remedy, by an action for a malicious prosecution. Here the party has no other remedy but the present action, and if it is not supported, he is remediless. The council keep no record of acquittal, on which an action for a malicious prosecution could be founded.

*T. A. Emmet,* in reply. This action is novel, and in that view, it is important. No inference can, or ought to be drawn, from the truth or falsehood of the charge,

* 10 sess. c. 1.

The only question is, whether such a petition, so presented, affords such a legal inference of malice, as will support the action. I say legal inference of malice ; for malice is a question of law, to be decided by the court, not a question of fact to be determined by a jury.[*] In the ordinary case of an action for a libel, the plaintiff first proves the publication, and then rests his cause. The only fact for a jury to find, is, whether the defendant had an evil intention towards the plaintiff; if so, the law will infer malice from the publication. In the case of *Jones* v. *Given*,[†] Lord Ch. J. *Parker* says, " *malice* and *maliciously* are terms of law, which, in a legal sense, always exclude a just cause ;" " and the court, and not the jury, have ever determined of malice." What is reasonable, or probable cause, is laid down by Justice *Buller*,[‡] to be matter of law. Hence a distinction may be stated, which will guide the court in the decision of this cause. In an ordinary case, where there is no duty to be performed, or trust discharged, in bringing a matter into the course of justice, there the uttering of defamatory matter is, *prima facie*, evidence of malice; but where a party discharges his duty, in bringing a thing in the way of judicial inquiry and redress, there the law does not imply malice, but it must be proved *aliunde* ; I say, in discharge of a duty, whether of perfect or imperfect obligation ; as what may be said by a member of a church, in the course of church discipline.[§] So where words are spoken in confidence, as to the character of a servant, or the credit of a person in trade ;[¶] or a matter is told as a story,[**] the law implies no malice, and no action can be sustained. In all these cases, and in many others which might be stated, the situation of the party, and the occasion of uttering the words, prevent the legal inference of malice; though the plaintiff may proceed to prove malice, *aliunde*. Now, the giving the character of

IN ERROR.
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

[*] 2 Ld. Raym. 1495.

[†] Gilb.Rep. 185.

[‡] 1 Term Rep. 520.

[§] 1 W. Black. Rep 386. 3 Johns. Rep. 180.

[¶] Bull. N. P. 8.

[**] Cro. Jac. 91.

IN ERROR.
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

a public officer to the council of appointment, does not go further than the cases which have been stated ; and as the plaintiff has only proved the publication, without proceeding to show malice, the action is not maintained.

There are cases in which no action can be maintained, though words are spoken from express malice ; as by counsel in a cause, in a court of justice ; so when any thing is said or done in a course of judicial proceeding ; or where memorials or petitions are presented to persons having the power to hear and redress grievances.  It is true, that in some of the cases of this description, an action will lie for express malice, but not an action of slander, or for a libel.  It is said, that falsehood carries with it proof of malice.  Not so ; for a matter may be untrue, and yet be stated from good motives and innocent intentions.  If, then, malice be an inference of law, the jury are not to decide upon it ; and the ground of the bill of exceptions in this case is, that the judge left it to the decision of the jury.

This case comes within that class of cases which have been mentioned, of memorials or petitions to persons empowered to redress grievances.  It is not requisite that the persons addressed should have power to send for witnesses, or to try.  Where articles of peace are exhibited, the justice merely binds over the party to keep the peace ; so as to affidavits, in summary proceedings before magistrates ; or words spoken by counsel, in the course of a cause.  There is, and can be no compulsory process for witnesses, which is requisite only in case of a trial. The committee of grievances in parliament have no power to compel the attendance of witnesses, unless it is given to them by statute.  Nor had the officers of the guards, or the governors of *Greenwich* hospital, in the cases which have been cited, any such power.  And, in none of these cases, it is to be observed, would an action for malicious prosecution lie ; so that the party was equally

remediless with the defendant in error. But it is asked, are parties to be without redress ? It is not for me, nor for this court, to point out the remedy. In every case, where the party is not protected by the overbearing policy of the law, as in the cases of judges and juries, an action will lie, if express malice, and want of probable cause, can be proved. But the remedy is not by an action founded on implied malice. In such a case as this, the action does not rest on the truth or falsehood of the matter; but only on express malice, or want of probable cause.

If the petition to the council be a libel, then the council who put it on their files are liable to an action. Can it be the meaning of the constitution, that the council shall have power to displace public officers, at their pleasure, and yet that they should not inquire into the character and conduct of those officers, nor listen to complaints against them ?

The article of the constitution, and the section of the bill of rights, which have been cited, have no application. The office of a district attorney is not such a franchise as the framers of the constitution had in view. And the clause in the act declaring the rights of citizens, intended only, that they should not be compelled to answer. They may answer voluntarily.

Private, wanton and malicious slander, is not to be put on the same footing with the petition in this case, signed by twenty-four respectable freeholders of the county, acting in discharge of what they conceived to be their duty. If they may be honest, the law will not imply malice, merely from the presenting of the petition, though the facts stated are not true; but express malice, or want of probable cause must be proved. This is the distinction for which I contend, and on which I rest the cause.

IN ERROR.

ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

IN ERROR.
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

* 3 Johns. Rep.
180.

*Henry* observed, that in the case of *Jarvis* v. *Hathe-way*,* which had been cited by *Emmet*, Judge *Spencer*, who delivered the opinion of the court, expressed himself satisfied with the charge of the judge, at the trial, who left it to the jury to decide whether the words were spoken maliciously or not. " In actions of slander," he said, " it is of the essence of the action, that the words be spoken maliciously, and that, as matter of fact, belongs to the jury to decide." It was in the power of the present plaintiff in error to have excused or justified himself, if he had any defence. How can you prove *express malice ?* Is it to be supposed that the party will declare that he is actuated by malice ? It must always be inferred from circumstances ; and the *falsehood* of the charge is, *prima facie*, a ground for the inference of malice.

THE CHANCELLOR. This cause comes up on a writ of error from the supreme court.

It presents the question, whether a petition to the council of appointment, containing false allegations, and praying the removal of a public officer, is good cause of action, as for a libel.

This question is novel, of much interest and importance, and well merits a fuller consideration than the present occasion affords.

There is no question, as to the form of pleading. Whether a petition containing allegations true or false, (for here they are to be taken as false,) addressed and presented to the council of appointment, respecting a public officer, is merely, from the circumstances of its address and presentation, excluded from the general principles applying to libels, is the question presented.

The council of appointment forms one of the great departments of government, which has duties of a very important nature assigned to it; almost all the officers

of government are appointed by, and hold their of-
fices during its pleasure; constitutionally, the council is
only responsible for the abuse, not for the liberal, uncor-
rupted exercise of its powers.

It is, doubtless, the interest of the public, to have
the door of information as widely expanded to a body
of this description, as the delicate trust confided to
them, and the extent of the objects committed to their
management, require.

Before the general legal principles, which may be
permitted to influence this question, are considered, it
may be well to examine the authorities which have been
relied on in argument, to discover whether any positive
rule, or satisfactory analogy, can be discovered from
them, to assist our determination.

There is one distinction, which, it appears to me, is
a solid one, pervading all the cases which have been
cited. I shall lay it down as collected from them, to
enable the court to compare them with it, and apply it to
them, as I proceed in the examination of those cases:
it is this, that all of them, the case from 1 *Term Rep.* 520.
excepted, are cases of a prosecution in a course of justice,
or a complaint founded on private right or private inju-
ry, in which the recovery of the one, or the redress of
the other, was the object of pursuit.

The first case cited is that of *Buckley* v. *Wood.** In
that case the counsel for both parties agreed, that if the
complaint was in a course of justice, no action would
lie.

\* *Cro. Eliz.* 230.
347.

In that case, the slanderous matter alleged in the bill
exhibited in the star chamber, was not examinable there,
and so the action was sustained.

The same case is reported in *Coke,*† but more at
large; and from that report, it appears, that it was resol-
ved by the whole court, that for any matter contained in
the bill, which was examinable in the said court, no ac-

† 4 *Co.* 14.

IN ERROR.
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

\* 1 *Saund.* 131.

† 2 *Burr.* 807.

÷ 4 *Bac. Abr.*
452.

§ 1 *Term Rep.*
111.

tion lies, although the matter is false. Not so, if not examinable there.

The case of *The King* v. *Lake*,\* arose on a petition, addressed to a committee of grievances. From the record it appears to have been presented in the course of obtaining justice against the acts of an ecclesiastical jurisdiction, which, the petitioner alleged, oppressed both him and his tenants ; and, after several debates, it was agreed, that the exhibiting the petition to a committee of parliament was lawful, and that no action lies for it, though it be false and scandalous, *because it is in a course of justice.*

In the case of *Ashley* v. *Young*,† Lord *Mansfield* denies that a matter given in evidence, in a course of justice, may be prosecuted in a civil action, as a libel. He adverts to the case of *The King* v. *Lake*, and recognises its doctrine.

Of the case of the deputy governor of *Greenwich* hospital, we have no report. It was, probably, from his situation, his duty to correct the abuses prevailing in the hospital, and he confined his communications only to the governors.

The case of *The King* v. *Bailey*‡ arose on a writing directed to General *Willis*, and the four principal officers of the *British* king's guards, to be presented to the king.

It was held to be no libel, for it was a representation of an injury.

Circumstances may justify a writing, which, destitute of them, would constitute a libel ; and the mere publication of such writing, without the attendant circumstances to justify it, carries with it an evidence of malice.§

In the present case, no private right was attempted to be asserted; no redress of private injury sought, to which the summary justice of removal could be applied.

3

IN ERORR.
.....
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

It was not calculated to correct a public grievance, unless that grievance existed.

As it was not in the regular course of justice, it was, in my opinion, made at the peril of the petitioners.

If the interest of the community is to be essentially promoted by affording the council every possible facility to collect the most authentic and correct information, it must certainly be at variance with that interest, to expose it to be practised upon and deceived by calumniators, so as to become the involuntary agents of attaching the most invidious charges to officers of irreproachable conduct, and spotless reputation.

If it were only necessary to frame an address to the council, to exempt the representations made to it from the legal consequences of composing and publishing a libel, the files of the council might be polluted with the effusions of malignity and detraction, with perfect impunity.

The council may inquire, but they possess not the power, nor are they constitutionally competent to examine and determine upon an accusation, so as to produce the effect of a trial at common law; their inquiries and determinations must necessarily be summary and prompt, and unaided by those powers which enable courts of justice to investigate thoroughly, and decide properly, on the subject matter. They cannot compel the attendance of witnesses, and even the officers accused are not legally compellable to appear before them, though they may be disposed to do so, from considerations of expediency.

The legal position deducible from these premises, and from the principles of our government, in my opinion, is, that the council may receive every information relative to the conduct of public officers, necessary to enable it fairly, impartially and discreetly, to exercise the power vested in it ; but to be given at the peril of the informant. If he approaches the council with other than pure views ; if, under the mask of vindicating his

*IN ERROR.*
......
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

violated rights; seeking a redress for injuries, or re-moving a public grievance, he calumniates the man against whom he prefers his complaint, I can discover no legal, or even plausible ground to shield him from answering as a libeller; and the opinion of the court from 4 *Co.* 14. in the case of *Buckley* v. *Wood*, I consi-der as very apposite to this case. It is dictated by sound principles of law, and solid sense.

If such matters may be inserted in bills, exhibited " in great slander of the parties, and they cannot an-swer it to clear themselves, nor have their actions, as well to clear themselves of the crimes, as to recover damages for the great injury and wrong done them, great inconveniences will ensue. But the said libel, without any remedy given to the party, will always re-main on record, to his shame and infamy."

For these reasons, I am of opinion, that the judg-ment of the supreme court ought to be affirmed.

L'HOMMEDIEU, Senator. This is the first instance, I believe, where an action has been brought for a libel, for words in a petition to a council, for removing an officer of government. It appears to me to be very dif-ferent from a libel not attended with this circumstance, and does not, *prima facie*, carry with it the presumption of malice. I believe, on examining the petitions to the council, for the removal from office, hundreds will be found as libellous as this. I have seen a great many my-self. And if all the facts they state, and which they profess to believe, and which cannot be proved before a court of justice, are to be adjudged libellous, and done by malice, there may be prosecutions without number; and an end will be put to all complaints, against persons holding offices, for their removal; for what person would complain, or tell his opinion, respecting the misconduct of officers, when he would be liable to be harassed in a court of law, and be put to great expense, even if he could prove

his opinion correct. This shows the necessity of
proving that such petitions were presented through ma-
lice by the petitioner, in all cases of this kind, and not
leave it to be inferred, because they are not able to prove
the facts in a court of law.

The council of appointment being a court, if I may
so call it, to hear all complaints against officers of go-
vernment, there is an implied protection for the com-
plainants, unless it can be proved the same was done by
malice. This is the case, in other courts, in many in-
stances, cited from the books, on the argument, before
this court.

It is common for the council of appointment, on com-
plaint against an officer, to notify him of the complaint,
and to cite the witnesses against him to attend at a cer-
tain day; if the person complained of is acquitted, and
the charge not proved, shall the person complaining be
charged with a libel, unless the charges can be proved
to have been made through malice?

In this case the petition was made openly, and signed
by 24 persons, many of whom were respectable inha-
bitants of *Washington*, and must have been well known to
Mr. *Blanchard;* and is it not a very extraordinary thing,
that all those persons should sign that petition through
malice? On the contrary, the presumption is, that they
did it with a good intent, and for the public good, and
spoke the truth when they said " in our opinion," &c.
as nothing appears that it was not their opinion, and
there is no proof of malice. Further, it seems strange,
when this petition was public, at the time, no prosecu-
tion was brought for a number of years. The peti-
tioners might have been able to prove their opinions, at
the time; but they may not be able to do so, after so
long a lapse of time.

Besides, it does not appear that this petition was the
cause of Mr. *Blanchard's* being dismissed from office;

but the contrary, as neither he nor the complainants were cited before the council; but rather that the council removed him for other considerations, or were of the same opinion with the petitioners.

On the whole, I am clearly of the opinion, that the judgment of the court below ought to be reversed.

CLINTON, Senator. It is to be regretted, that the hasty decisions of the judges at the circuits, formed and pronounced, without time for deliberation, and without an opportunity of recurring to authorities, are not, in all cases, subjected to a revision in the supreme court, before they are brought to this *forum.* Instances then would not occur before us, like the present; and we should not be necessitated to review a decision which violates the most sacred and unquestionable rights of free citizens; rights essential to the very existence of a free government; rights necessarily connected with the relations of constituent and representative; the right of petitioning for a redress of grievances, and the right of remonstrating to the competent authority, against the abuse of official functions; and there can be no doubt, but that the candid and learned judge, who presided at the trial of this cause, would willingly have availed himself of an opportunity to retract a decision, so erroneous in itself, and so pernicious in its consequences.

It appears that the defendant in error was a district attorney, for the district of which the county of *Washington* is a part; that the plaintiff and twenty-three other citizens of that county represented him to the council as having been guilty of malversation in office: That, after the lapse of some years, the defendant obtained the petition from the files of the council, and instituted this suit; that the chief justice, at the circuit, charged the jury that the petition was sufficient to support the action, and the jury, accordingly, found a verdict for the plaintiff in the court below.

There can be no doubt, but that malice, as well as falsehood, is essential to sustain an action of slander. A variety of cases go to establish, that where the words are in themselves actionable, yet, if spoken without any malicious intention, in the confidence of friendship, in the performance of church discipline, in the regular course of judicial proceedings, or in the discharge of the duties of life, an action of slander will not lie, because the circumstances, under which they are spoken, destroy the presumption of malice; and without malice there can be no slander. In proof of this position, I refer generally to the cases which have been cited, where a character was given of a servant, in confidence; where one friend advised another of the probable bankruptcy of a merchant; where false charges were exhibited against a person, to bind him to his good behaviour; where a clergyman recited a false story, out of *Fox's Martyrology*, from the pulpit; where crimes were charged, in the course of ecclesiastical discipline; where a counsel used reproachful and slanderous words in a court of justice. All these cases, and more that might be referred to, establish, beyond a doubt, that without malice, either express or implied, an action of slander, for words spoken, or words written or printed, cannot be supported. In the case of *Edmonson* v. *Stephenson*,\* (the case where an injurious character was given of a servant,) Lord *Mansfield* declared, that it was not to be considered as an action in the common way of defamation, by words spoken, but the *gist* of it must be malice, which is not implied from the occasion of speaking, but should be directly proved.

The case before us cannot be considered as an ordinary libel, where malice is to be implied from the face of the libel. It was, at all events, incumbent on the prosecutor to prove express malice; to demonstrate that an evil intention existed; to show, in the words of *Hawkins*, that the petition was entirely false, malicious

*IN ERROR.*
........
ALBANY,
Feb. 1809.
THORN
v.
BLANCHARD.

\* *Bull. N. P.* 8.

and groundless, and instituted, not with a design to go through with it, but only to expose the defendant's character, under the show of a legal proceeding. And as this was not done, nor attempted; and as the chief justice did not declare that it was necessary to be done, and charge the jury to that effect, I think it, on this ground, a clear case in favour of the plaintiff in error. Indeed, I have no hesitation in going further, and saying, that the chief justice ought to have told the jury that the presumption was against malice, and that, in that state of the evidence, they ought not to have hesitated about finding against the plaintiff. It is not very material, in the decision of this cause, to determine whether malice is a deduction of law, to be decided by the court, or a question of fact, to be settled by the jury. In either hypothesis, it was not made out in the present controversy.

But there is a certain class of cases, wherein no prosecution for a libel will lie, when the matter contained in it is false and scandalous; as in a petition to a committee of parliament; in articles of the peace, exhibited to justices of the peace; a presentment of a grand jury; in a proceeding in a regular course of justice; in assigning, on the books of a quakers' meeting, reasons for expelling a member; in an exposition of the abuses of a public institution, as in the case of the deputy governor of *Greenwich* hospital, addressed to the competent authority to administer redress. The policy of the law here steps in and controls the individual right of redress. The freedom of inquiry, the right of exposing malversation in public men and public institutions, to the proper authority, the importance of punishing offences, and the danger of silencing inquiry and of affording impunity to guilt, have all combined to shut the door against prosecutions for libels, in cases of that, or of an analogous nature. (2 *Hawk.* b. 1. c. 73. s. 8. 4

*Bac. Abr.* 452. *Esp. Dig.* 506. and 4 *Com. Dig.* 717. c. 2.)
The case before us is an application to the council of
appointment, for the removal of a district attorney,
charging him with malversation in office. It is in the
nature of a memorial for the redress of grievances, ad-
dressed in the proper channel by which such redress
might be had.

*IN ERROR.*
........
ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

It is admitted by the counsel for the defendant in er-
ror, that if the paper had been addressed to the house
of assembly, as a grand inquest, no action could be
sustained; and their whole defence rests upon its being
sent to an improper or incompetent *forum.*

It is, at least, doubtful, whether a want of jurisdic-
tion in the court to which a complaint may be exhi-
bited, will make it a libel; because the mistake of the
court is not imputable to the party, but to his counsel.

The broad case of charging a man with a felony in
the court of chancery is put in the books; a court ob-
viously destitute of criminal jurisdiction. The council
of appointment cannot be contemplated in this light.
It has, at least, some authority over the complaint. And,
therefore, even if the doctrines of the defendant's coun-
cil are admitted to be, in some degree, correct, in their
application to the council of appointment; yet it would,
by no means, follow, that that body was to be con-
sidered, in all respects, similarly situated as other *fo-
rums* without a shadow of jurisdiction.

The application to the council was to remove a public
officer, for malversation in office. It will not be denied
but that the council have plenary authority to remove.
If so, they unquestionably have the power to redress the
grievance; for with the removal of the officer, his power
to injure must be determined. The competency of the
*forum* cannot be disputed; but it is contended, that it is
not armed with the necessary powers to inquire into of-
ficial malversation, by compelling the attendance of wit-
nesses; and that to swear falsely before them would not

CASES IN THE COURT OF ERRORS

*IN ERROR.*
........

ALBANY,
Feb. 1809.

THORN
v.
BLANCHARD.

be punishable as perjury.  That our laws have not sufficiently provided in these cases, may be true ; but this defect of legal provision does not affect the constitutional powers of the council.  In their investigations of complaints, they must take the best measures in their power to elicit truth and to dispense justice.  And although their proceedings may be of a summary nature, and not, in all respects, conformable to the forms of judicial tribunals ; yet it is to be remarked, that the power of removal is not with a view to punish the man, but to protect the public against the misconduct of the officer ; that it is exercised over the officer, not over the individual ; that impeachment is a process of a different nature, difficult in its commencement, slow in its progress, and more extensive in its punishment ; that, under the most favourable view of the case for the defendant in error, we must agree, that our constitution has provided for the removal of a public officer in two ways ; by the council of appointment, and by the court for the trial of impeachments ; that the present complaint was addressed to the former *forum ;* and that unless we deny its power to expel a public officer, holding during pleasure, from office, we must admit, that the grievances complained of by the plaintiff and his coadjutors, were transmitted to the competent and proper authority ; and, whether true or false, whether innocent or malicious, the powerful and commanding dictates of public policy, must merge and extinguish all individual claims, and all personal considerations.

The majority of the court being of this opinion ; it was, thereupon, ORDERED, ADJUDGED and DECREED, that the judgment given below be reversed.

Judgment of reversal.